# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

UNITED STATES OF AMERICA            PLAINTIFF

vs.            CRIMINAL ACTION NO. 3:18-CR-4-CRS

JAMES PAYTON            DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court for consideration of a renewed motion of the defendant, James Payton ("Payton"), for compassionate release. DN 37; DN 40. The United States responded, objecting to the motion, and filed a motion to seal the response and attached exhibits. DN 42; DN 43. Payton filed a reply. DN 44. The matter is ripe for review.

The World Health Organization declared the novel coronavirus known as COVID-19 a pandemic on March 11, 2020.[1] The President of the United States declared a national emergency on March 13, 2020 and the Governor of the Commonwealth of Kentucky declared a state of emergency even earlier, after the first confirmed case of COVID-19 on March 6, 2020.[2] As of the date of this writing, there are 30,055,710 confirmed cases worldwide and 943,433 deaths; in the United States, there are 6,571,119 confirmed cases and 195,638 deaths.[3] Further elaboration concerning the health risks associated with COVID-19, especially for those individuals confined to nursing homes or incarcerated in our jails and prisons, is unnecessary. Suffice it to say that the

---

[1] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who-director-general-s-openingremarks-at-the-media-briefing-on-covid-19--11-march-2020)

[2] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/; Governor Andy Beshear confirms first case of COVID-19 in the Commonwealth and declares a state of emergency (March 6, 2020), *available at* https://chfs.ky.gov/pages/search.aspx?affiliateId=CHFS&terms=declaration of state of emergency.

[3] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://who.sprinklr.com/ (last visited September 18, 2020).

Court addresses motions for compassionate release, and Payton's motion in particular here, with the gravity of the situation in mind.

Payton is serving a 120-month sentence for pleading guilty to four counts of possession with intent to distribute controlled substances and a single count of distribution of a controlled substance. DN 37 at 1; DN 43 at 1–2. The Court sentenced Payton on August 9, 2018. DN 28. He is currently incarcerated at FMC Lexington. DN 37 at 2; DN 43 at 7.

18 U.S.C. § 3582(c)(1)(A) permits a court to modify a term of imprisonment and grant what is known as "compassionate release" for extraordinary and compelling reasons. Prior to December 2018, motions for compassionate release could only be made by the Director of Prisons. However, the First Step Act, PL 115-391, 132 Stat 5194 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to bring such motions on their own behalf "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]"

Payton, through his counsel, filed a request with the BOP to be considered for compassionate release or a reduction in sentence on May 27, 2020. DN 45-1 at 6. Payton has also provided a letter from Warden Francisco Quintana, dated July 15, 2020, in which the Warden stated Payton's request for had been received and "is being processed for further review." *Id*. Payton filed the instant motion on July 2, 2020, over thirty days after he initially filed his request. DN 40. Accordingly, Payton has satisfied the exhaustion requirement of the First Step Act. *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *2 (June 2, 2020)("For a prisoner to take his [compassionate release] claim to court, "he must 'fully exhaust[ ] all administrative rights to appeal' with the prison or wait 30 days after his first request to the prison." ")

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The court must also consider the "[sentencing] factors set forth in section 3553(a) to the extent they are applicable." § 3582(c)(1)(A).

Congress tasked the Sentencing Commission that, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [it] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In the Commentary to U.S.S.G. § 1B1.3,[4] the Commission described four circumstances which constitute extraordinary and compelling reasons for sentence reduction:

> **(A) Medical Condition of the Defendant.--**
>
> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> **(ii)** The defendant is--
>
> **(I)** suffering from a serious physical or medical condition,
>
> **(II)** suffering from a serious functional or cognitive impairment, or
>
> **(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-

---

[4] "While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g., United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider." *United States v. McGraw*, No. 202CR00018LJMCMM, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019).

care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances.--**

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

**(ii)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

The BOP promulgated Program Statement No. 5050.50 in order to implement the statutory scheme.

Payton's sole argument for compassionate release is that his medical conditions put him "in several groups most at risk of contracting [COVID-19] and suffering the most severe health consequences – hospitalization or death." DN 37 at 2. It is undisputed that Payton has several medical conditions including congestive heart-failure, an implanted defibrillator, diabetes, hypertension, high blood pressure, and high cholesterol. *Id.*; DN 43 at 5. Payton does not allege that any of his health conditions are terminal, thereby making him ineligible for compassionate release under U.S.S.G. § 1B1.3(A).

Payton is currently incarcerated at a federal medical center and, as evidenced by his medical history, he is receiving consistent and extensive treatment for his conditions. *See* DN 43-2. Payton does not assert that his conditions are not being treated adequately and effectively. He does, however, direct the Court to a single recent episode as evidence that "the BOP [cannot] be relied upon to be taking good care of Mr. Payton." DN 44 at 2. Payton's medical records show that

4

he had a medical emergency on May 28, 2020. DN 43-2 at 10. The records provide that Payton stated he did not have access to his medication for three days and that he was hyperventilating, pacing, and coughing up pink tinged sputum. *Id*. He was given oxygen and a normal dose of his medications. *Id*. Four days later, he had a chest x-ray that showed potential congestive heart failure and interstitial edema. DN 43-2 at 5. He was prescribed an increased dose of medication for his hypertension and heart failure. *Id*. Based on the record before the Court, Payton has not required any follow-up treatment from this episode.

"A court could find that [a] defendant's medical condition, heightened by risks posed by COVID-19, 'substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility' and is one 'from which he or she is not expected to recover.'" *United States v. Bolze*, No. 3:09-CR-93-TAV-CCS-1, 2020 WL 2521273, at *7 (E.D. Tenn., May 13, 2020) (citing 1B1.13 n.1(A)(ii)). Payton's medical conditions do not reach this threshold. While the Court agrees that "one or more of [Payton's] medical conditions, independently or in combination, may heighten his risk of suffering complications from COVID-19," *Bolze*, 2020 WL 2521273 at *8, all his conditions are being effectively treated with medication and other therapies. There is no evidence to suggest that Payton cannot provide self-care for his conditions or that he is not expected to recover from these conditions. Indeed, the regular and consistent care Payton has been provided in FMC Lexington demonstrates that he has been able to maintain self-care while incarcerated, even with his extensive medical conditions.

Further, Payton's request is based on the proposition that an individual with his medical conditions will be safer from COVID-19 if released compared to staying in FMC Lexington. This proposition is without merit. As of the writing of this opinion, FMC Lexington has 1,251 total inmates, six of which are currently infected with COVID-19, and 206 of which have recovered

from the virus.[5] This amounts to approximately a .48% positivity rate. In comparison, Kentucky has averaged 709 COVID-19 cases per day over the last week and currently has a 3.28% positivity rate.[6] FMC Lexington's low positivity rate and case count suggest that the BOP has been diligent in its efforts to contain and prevent the spread of the virus within the facility. Accordingly, Payton has failed to demonstrate that he is at a higher risk of contracting COVID-19 in FMC Lexington compared to being released.

Payton has failed to articulate an extraordinary and compelling reason for compassionate release. For the reasons stated above, Payton's motion will be denied.

Additionally, even when a defendant is statutorily eligible for a sentence reduction based on extraordinary and compelling reasons, compassionate release is only appropriate after consideration of the factors set forth in 18 U.S.C. § 3553(a) and where the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 4142(g). The United States urges that the nature and circumstances of Payton's crimes weigh against release. The Court agrees.

Payton is a repeat offender who pled guilty to multiple counts of possessing with the intent to distribute controlled substances and a single count of distribution of a controlled substance. DN 37 at 1; DN 43 at 1–2. After Payton attempted to evade arrest, the police found powder cocaine, marijuana, heroin, and crack cocaine. DN 43 at 9. Payton has a prior conviction for drug trafficking from 1990. DN 37 at 3; DN 43 at 2. Therefore, there appears a significant possibility that Payton may disregard conditions of release and reoffend.

---

[5] *See* https://www.bop.gov/coronavirus/index.jsp (last visited September 18, 2020).
[6] *See* https://www.nytimes.com/interactive/2020/us/kentucky-coronavirus-cases.html; https://govstatus.egov.com/kycovid19 .(last visited September 18, 2020).

Further, Payton states that he intends to return to a home he owns at 920 Dixie Highway if he is released. DN 37 at 3. With the dangers posed by the pandemic impacting the ability of the probation officers to conduct home visits and supervision, it would be exceptionally difficult to adequately and safely monitor the defendant's compliance. The ability to monitor the defendant is clearly a proper consideration when assessing the danger posed by release of an individual, especially where the defendant had prior drug offenses. Considering these circumstances, compassionate release would be improper.

Motion having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the renewed motion of the defendant, James Payton, for compassionate release (DN 37; DN 40) is **DENIED.** The United States' motion to seal its response and the attached exhibits (DN 42) is **GRANTED.**

**IT IS SO ORDERED.**

September 21, 2020

**Charles R. Simpson III, Senior Judge**
**United States District Court**